FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 20 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HARRY SCOTT MILLER, Inmate # GDC 568717, Plaintiff, | :: :: :: | CIVIL ACTION NO. 1:06-CV-3118-JEC |
| v. | :: :: | |
| HAYS STATE PRISON, STEVE UPTON, Warden, MEDICAL DEP'T, Defendants. | :: :: :: :: | PRISONER CIVIL RIGHTS 42 U.S.C. § 1983 |

## ORDER AND OPINION

Plaintiff, an inmate at Hays State Prison in Trion, Georgia, has filed the instant pro se 42 U.S.C. § 1983 action. [Doc. 1.] Plaintiff has been granted in forma pauperis status, and the matter is now before the Court for a 28 U.S.C. § 1915A screening.

### I. 28 U.S.C. § 1915A Frivolity Review

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or an officer or employee thereof, to determine whether the action (1) is frivolous, malicious, or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it "has little or no chance of success," i.e., when it appears "from the face of the complaint that the factual allegations are clearly baseless or that the legal

theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it appears beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). If a plaintiff fails to satisfy these requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because plaintiffs' factual allegations were insufficient to support the alleged constitutional violation).

## II. Plaintiff's allegations

Plaintiff sets forth the following allegations against Steve Upton, the Warden of Hays State Prison (Hays), and the Medical Department at Hays. [Doc. 1 at 1, 4.] Plaintiff claims that he injured his shoulder, neck, and hip area on August 30, 2006, when he fell in the shower area at Hays Annex North Unit #4. [Id. ¶ IV.] Fellow

inmates helped him to return to his cell, and Plaintiff requested medical assistance the next morning. However, instead of being taken to the hospital immediately to treat his shoulder, which "was visibly out of socket," he was taken to the infirmary and given an x-ray and a heat pack. No one removed his shirt to see the bruises forming on his shoulder, back, and hip, and no doctor or physician's assistant examined his injuries. [Id.]

After a nurse gave him some Ibuprofen and a sling for his arm, which was too big and therefore "left [his] arm hanging," Plaintiff was returned to his dormitory and told that it would take three weeks to read his x-ray. The prison doctor was terminated on September 1, 2006, and Plaintiff filed a grievance on September 5, 2006, at which time mats were placed in the shower area to prevent falls. [Id.] Plaintiff did not receive a doctor's examination or pain medication until September 22, 2006, during which time he complained "almost daily" to Lt. Jackson and Officer Jarmon. Finally, on September 22, 2006, Dr. Centa examined him and immediately called Mr. Patterson, the hospital administrator, for a consultation, at which time "both agreed to send [Plaintiff] ASAP for a[n] emergency M.R.I. and orthopedic doctor." [Id.]

3

Plaintiff "finally got pain medication" and a proper sling for his arm on September 26, 2006. [Id. attach.] Dr. Centa told Plaintiff that "she couldn't understand how [he] slipped through the cracks and hadn't been seen but she was gonna cover herself and order [Plaintiff] the best medical attention possible." [Id.] Over the following eight weeks, Plaintiff received "a very painful physical therapy rehab" for his rotator cuff injury, which restored most of the range of motion to his injured shoulder. However, he yet endures "extreme pain" in his neck, and he "assume[s]" his shoulder will require surgery "because it pops, snaps, and hangs up at certain points." [Id.]

Plaintiff alleges that his injury was caused by "slick wall tile on the floor" in the shower area, which, due to the "steep degree of slant," has caused numerous other inmate injuries as well. [Id.] Plaintiff states that he has affidavits from fellow prisoners proving that (1) Officer Jarmon attempted to force Plaintiff to back-date his September 6, 2006, grievance to August 30, 2006; (2) the staff refused to take pictures of his injuries; and (3) Lt. Collette said that "it's cheaper to fix 3 or 4 inmates in medical than it is to rebuild the shower floor." Plaintiff states that he has yet to receive an answer for his "neck pain and shoulder problem." [Id.] Plaintiff claims that the Warden admitted, in writing, that the shower area at Hays North Annex Unit

4

#4 was dangerous, which is why the mats were installed there to prevent further injury. [Id.] Plaintiff seeks "prompt medical attention and continued care by [a] specialist at a[n] outside hospital." He also appears to seek damages for his pain and suffering. [Id. ¶ V.]

### III. Discussion

A. <u>Conditions of confinement</u>

For there to be a violation of the Eighth Amendment constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation—one denying the minimal civilized measure of life's necessities. Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," however, "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotations omitted). See also Wilson v. Seiter, 501 U.S. 294, 298 (1991) (noting that "[t]he Constitution . . . does not mandate comfortable prisons") (internal quotations omitted). Nevertheless, in order to prevail

5

on an Eighth Amendment challenge to his conditions of confinement, a prisoner "need not await a tragic event before seeking relief, [but] he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation and internal quotations omitted).

**B.    Deliberate indifference to a serious medical need**

The Eighth Amendment also prohibits deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To establish deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). See also Hill v. Dekalb Reg. Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

A plaintiff may establish a prison official's deliberate indifference by showing that the official failed or refused to provide care for a serious medical condition, delayed care "even for a period of hours," chose "an easier but less efficacious course

6

...
of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). See Hill, 40 F.3d at 1187 (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain") (citation and internal quotations omitted); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim").

Negligence, however, even rising to the level of medical malpractice, does not constitute deliberate indifference. McElligott, 182 F.3d at 1254. See also Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice–negligence by a physician–is insufficient to form the basis of a claim for deliberate indifference"), amended by 205 F.3d 1264 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim). Nor does a simple disagreement over a diagnosis or course of treatment constitute deliberate indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment

7

does not give rise to a constitutional claim. See Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991); see also Adams, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").

## C. Supervisory liability

Noting the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability," the Eleventh Circuit has stated that, instead, a supervisor is liable in his individual capacity under § 1983 only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). This causal connection can be established by showing that the responsible supervisor (1) knew about and failed to correct a widespread history of abuse or (2) had a custom or policy that resulted in a constitutional violation, or that (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (Internal quotations omitted).

8

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id.

Plaintiff alleges that Warden Upton was aware of the dangerous condition of the shower area at Hays Annex North Unit #4, yet failed to correct it until after Plaintiff himself was seriously injured there. This allegation is sufficient to make out a cause of action against the Warden for deliberate indifference, based on supervisory liability. Moreover, Plaintiff alleges that his obvious and serious medical condition went virtually untreated for more than three weeks, during which time he was in extreme pain. This allegation is sufficient to make out a cause of action for deliberate indifference to a serious medical need.

## IV. Conclusions

For the foregoing reasons, this Court finds that Plaintiff has alleged causes of action that pass muster under 28 U.S.C. § 1915A. It does not appear beyond doubt that Plaintiff could prove no set of facts that would entitle him to relief. Accordingly, in light of the allegations presented, and in deference to Plaintiff's pro se status, **IT IS ORDERED** that his claims be allowed to **PROCEED** as in any other civil action with respect to (1) Warden Upton's potential liability for the alleged injuries Plaintiff sustained in the shower area at Hays Annex North Unit #4 and (2) the potential

liability of members of the Hays Medical Department for the alleged delays in treating Plaintiff's injuries. However, because Plaintiff may not sue Hays State Prison itself or the Hays Medical Department[1] per se, the Clerk is **DIRECTED** to substitute Dr. Centa and Mr. Patterson for Hays State Prison and the "Medical Department" as named Defendants, until such time as those individuals responsible for the alleged delays in adequate medical treatment for Plaintiff are identified, either by Plaintiff or by the newly named Defendants.

Finally, Plaintiff's motion for appointment of counsel [Doc. 4] is **DENIED**. To date, Plaintiff has presented his claims adequately. Moreover, the Court does not find that the facts or issues in this case are so complex as to warrant appointment of counsel at this time. See Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993) (noting that appointment of counsel in civil cases is "a privilege justified only by exceptional

---

[1] The Eleventh Amendment bars a § 1983 action against a State and its agencies "regardless of whether the plaintiff seeks money damages or prospective injunctive relief," unless the State or its agency has waived its Eleventh Amendment immunity or has demonstrated, through affirmative conduct, its consent to be sued in federal court. Stevens v. Gay, 864 F.2d 113, 115 & n.5 (11th Cir. 1989). See Ga. Const., art. I, § II, para. IX (2007) (providing that "sovereign immunity extends to the state and all of its departments and agencies," and no waiver of sovereign immunity by the State legislature shall be construed to waive any immunity under the United States Constitution).

10

circumstances, such as the presence of facts and legal issues . . . so novel or complex as to require the assistance of a trained practitioner") (internal quotations omitted).

## V. Service of process and related matters

The Clerk is hereby **DIRECTED** to send Plaintiff a USM 285 form and summons for each remaining Defendant (Warden Upton, Dr. Centa, and Mr. Patterson), along with an initial disclosures form. Plaintiff is **DIRECTED** to complete a USM 285 form and summons for each Defendant, complete the initial disclosures form, and return all of the forms to the Clerk of Court within twenty (20) days of the entry date of this Order. Plaintiff is warned that failure to comply in a timely manner could result in the dismissal of this civil action. The Clerk is **DIRECTED** to resubmit this action to the undersigned if Plaintiff fails to comply.

Upon receipt of the forms, the Clerk is **DIRECTED** to prepare a service waiver package for each Defendant. The service waiver package must include, for each Defendant, two (2) Notice of Lawsuit and Request for Waiver of Service of Summons forms (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first class postage for use by each Defendant for return of the waiver form, one (1) copy of the

complaint, one (1) copy of the initial disclosures form, and one (1) copy of this Order. The Clerk shall retain the USM 285 form and summons for each Defendant.

Upon completion of a service waiver package for each Defendant, the Clerk is **DIRECTED** to complete the lower portion of the Notice of Lawsuit and Request for Waiver form and to mail a service waiver package to each Defendant. Defendants have a duty to avoid unnecessary costs of serving the summons. If a Defendant fails to comply with the request for waiver of service, that Defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event a Defendant does not return an executed Waiver of Service form to the Clerk of Court within thirty-five (35) days following the date the service waiver package is mailed, the Clerk is **DIRECTED** to prepare and transmit to the U.S. Marshal's Service a service package for each Defendant who failed to return an executed waiver form. The service package must include the USM 285 form, the summons, and one (1) copy of the complaint. Upon receipt of the service package(s), the U.S. Marshal's Service is **DIRECTED** to personally serve each Defendant who failed to waive service. The executed waiver form or the completed USM 285 form shall be filed with the Clerk.

12

Plaintiff is **DIRECTED** to serve upon each Defendant or each Defendant's counsel a copy of every additional pleading or other document which is filed with the Clerk of the Court. Each pleading or other document filed with the Clerk shall include a certificate stating the date on which an accurate copy of that paper was mailed to each Defendant or each Defendant's counsel. This Court shall disregard any submitted papers which have not been properly filed with the Clerk or which do not include a certificate of service.

Plaintiff is also **REQUIRED** to **KEEP** the Court and each Defendant advised of his current address at all times during the pendency of this action. Plaintiff is admonished that the failure to do so may result in the dismissal of this action.

This case **SHALL PROCEED** on a four (4) month discovery track, beginning thirty (30) days after the appearance of the first Defendant by answer to the complaint, subject to extension by motion filed prior to the expiration of the existing discovery period. See N.D. Ga., LR 26.2.A., LR 26.2.B.

IT IS SO ORDERED this _19_ day of _March_, 2007.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

13